IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PAJARO ENERGY, LLC, a Colorado limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> THRESHER ENERGY, INC., a Delaware corporation, <br><br> Defendant. | Case No.: 4:26-cv-02067 |

VERIFIED COMPLAINT FOR IMMEDIATE APPOINTMENT
OF RECEIVER AND OTHER RELIEF

Plaintiff Pajaro Energy, LLC ("*Plaintiff*") files this Verified Complaint against Defendant Thresher Energy, Inc. ("*Defendant*"), and respectfully states as follows:

I.   NATURE OF ACTION

1. This case concerns the wasting of Defendant's oil and gas assets and declining operations, the potential and likely loss of leases (and Plaintiff's collateral) due to Defendant's failure to pay royalties, the potential environmental issues associated with oil and gas operations due to Defendant's lack of liquidity and capital necessary to properly plug and abandon inactive wells (and to properly monitor and maintain active wells), and the corresponding breach of loan obligations to Plaintiff secured by the mineral interests and other real property located in Texas and other states. Plaintiff has exhausted all options in the face of Defendant's protracted defaults and growing risk to collateral and environmental issues, notwithstanding extending millions in credit to Defendant and creating opportunities to stabilize operations. Indeed, as explained below, Defendant's financial distress not only creates potential environmental issues, but it also jeopardizes the value of Plaintiff's secured interests and the going concern value of Defendant's

1

already depleting oil and gas operations. Plaintiff therefore brings this action for an Order immediately appointing a receiver to take control of Defendant's assets and business operations, as expressly consented to by Defendant under the loan documents and equitably warranted under the circumstances.

## II.  PARTIES

2. Plaintiff Pajaro Energy, LLC is a Colorado limited liability company with its principal place of business at 608 W Texas Avenue, Artesia, New Mexico 88210. Pajaro Energy's sole member is a citizen of the State of New Mexico.

3. Defendant, Thresher Energy, Inc., is a Delaware corporation with its principal place of business at 2 Northpoint Drive, Suite 800, Houston, Texas 77060. Defendant may be served with process through its registered agent, C T Corporation System, at 1999 Bryan St., Ste 900, Dallas, TX 75201.

## III.  JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and (c) because complete diversity of citizenship exists between Plaintiff and Defendant, and the amount in controversy, exclusive of costs and attorney fees, exceeds this Court's minimum jurisdictional requirement of $75,000.

5. Defendant is subject to personal jurisdiction in the State of Texas, and venue of this action is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District and a substantial part of the property that is the subject of the action is situated in this District.

## IV.     BACKGROUND FACTS[1]

**A.     The Wells and Mineral Interests at Issue**

6.     Defendant owns and operates approximately 99 wells in Texas, Oklahoma, and Kansas (the "***Thresher Wells***"). *See* Decl. of Heidi Porter, attached as **Exhibit 1** ("***Porter Decl.***"), at ¶ 5. The Thresher Wells are subject to an unknown number of oil and gas leases with mineral owners, which provide for the payment of royalties on the proceeds resulting from the sale of oil and gas produced from the leaseholds (the "***Leases***"). *See id*. at ¶ 6. Upon information and belief, the Thresher Wells also are subject to other obligations, such as overriding royalty assignments and reservations, that similarly require timely payment of proceeds on the sale of oil and gas produced from the Thresher Wells. *See id*.

7.     The Thresher Wells are in different modes of production: some wells are producing oil and gas, some wells currently are not in production, and other wells have not been in production for many months. *See id*. at ¶ 5. Without production, the leases will expire and Defendant loses the primary source of its revenue, *i.e.*, proceeds from selling oil and gas. *See id*. at ¶ 13.

8.     Oil and gas leases and overriding royalty agreements and obligations also require timely payment of royalties and overriding royalties, and state laws in Texas and Oklahoma impose presumptive payment timelines. *See* TEX. NAT. RES. CODE § 91.402(a); OKLA. STAT. tit. 52 § 570.10. Defendant acknowledges that it has failed to pay other owners with interests in the oil and gas proceeds that it produces and sells. *See Porter Decl.* at ¶ 8. Defendant has also conceded that it has ceased producing from some wells for financial reasons, which jeopardizes its leasehold mineral interests. *See id.*

---

[1] The facts set forth in this complaint are verified by the sworn declarations of Heidi Porter and Joshua Christiansen, attached to the complaint as Exhibit 1 and Exhibit 2, respectfully.

9. Defendant has not timely paid royalty and other interest owners. Instead, it has held a significant amount of funds in "suspense," meaning a ledger notation that owners might be owed funds, but it has not paid them. *See id*. at ¶¶ 7–8. Based on the Royalty Suspense Royalty Data provided by Defendant, the amount, the time frame, and categorization of the funds (*e.g.*, Missing Division Order, Unknown Address) indicate that Defendant has not performed its due diligence or actively pursued the resolution of these funds for the interest owners nor—in any case where funds were validly held in suspense—can Plaintiff confirm that they have been properly escheated to the State(s). *See id*. at ¶ 7. At least some of the suspense funds are invalid and some that may have been valid should have been escheated. *See id.* at ¶ 8. Failure to timely pay royalties creates liability for Defendant, both for unpaid principal as well as statutory and contractual interest. *See id*. at ¶ 9.

10. Defendant also has not timely paid vendors that have provided oilfield services for the Thresher Wells. *See id*. at ¶ 10. This, too, creates liability for Defendant for claims like breach of contract. *See id*. Additionally, many oilfield services (*e.g.*, materials and labor) are secured by contractual or statutory liens. *See id*. At least one lien has been recorded by an oilfield services provider against the Thresher Wells in Texas. *See id*. at ¶ 11.

11. While not paying royalties on the wells that are producing, other Thresher Wells are not currently producing and have not produced for several months. Indeed, none of the Thresher Wells in Texas are currently producing oil and gas. *See id*. at ¶ 12. And several of its wells in Oklahoma and Kansas have ceased production, or are only intermittently producing. *See id*. If production ceases, and there is not a valid excuse specified in the lease, then the underlying oil and gas lease can expire. *See id*. Maintaining the lease through production (or operations to maintain or restore production) is necessary to hold the lease and thereby maintain the right to

continue producing oil and gas. *See id*. The lack of production from some of the Thresher Wells threatens the leases' validity. *See id*.

12.  Defendant's financial condition is the cause for its inability to repair or rework its wells in order to restore or improve production, which also results in its inability to satisfy its loan obligations to Plaintiff. *See id*. at ¶ 13. This further risks dissipation of Defendant's assets.

13.  If a well has ceased producing because it is no longer economic, then contracts and state laws require that the well be timely plugged and abandoned. To Plaintiff's knowledge, Defendant has not plugged and abandoned any wells, likely because it lacks the financial resources to do so. *See id*. at ¶ 14. Failure to timely plug and abandon wells subjects Defendant to substantial liability both to landowners and state regulatory agencies. *See id*. Unattended and unrepaired wells also create environmental risks, such as leaks and spills. *See e.g., Environmental Risks and Opportunities of Orphaned Oil and Gas Wells*, Journal of Petroleum Technology (June 29, 2023), https://jpt.spe.org/environmental-risks-and-opportunities-of-orphaned-oil-and-gas-wells ("These inactive wells represent environmental risks because they have the potential to contaminate water supplies, degrade ecosystems, and emit methane and other air pollutants that are harmful to human health.").

**B.     The Original Loan Transaction**

14.  Plaintiff and Defendant are parties to a Credit Agreement originally entered into between Defendant and Texas Capital Bank, a Texas state bank (formerly known as Texas Capital Bank, N.A., a national banking association) ("***TCB***") (as later amended, the "***Original Credit Agreement***"),[2] pursuant to which TCB made a reducing revolving credit facility available to

---

[2] The Original Credit Agreement was amended numerous times, including via a First Amendment to Credit Agreement dated July 30, 2021, a Second Amendment to Credit Agreement dated

Defendant with an original maximum commitment amount of $50,000,000.00 (the "**Original Loan**"). *See* Decl. of Joshua Christiansen, attached as **Exhibit 2** ("***Christiansen Decl.***"), at ¶ 5.

C. **The Assignment of the Loan and the Loan Documents to Plaintiff**

15. On or about September 21, 2023, Plaintiff purchased and assumed the Original Loan from TCB and all of TCB's rights and obligations thereunder, including the Original Credit Agreement and the other documents listed and more particularly described in the Assignment and otherwise evidencing the Original Loan. Plaintiff purchased and assumed this interest pursuant to a Loan Sale Agreement dated September 21, 2023 (the "***Loan Sale Agreement***") by and among TCB and CDDR Properties-OG, LLC, a Texas limited liability company ("***CDDR***"), as sellers, and Plaintiff, as buyer, and an Assignment of Loan Documents dated September 21, 2023 (the "***Assignment***"), by and between TCB, as assignor, and Plaintiff, as assignee. *See id.* at ¶ 6. True and correct copies of the Loan Sale Agreement, the Assignment, and all other documents evidencing the loan described below are attached as **Exhibit 2-A**.

16. Shortly after Plaintiff assumed the Original Loan, Defendant failed to timely pay its monthly obligations under the Loan Documents, and thereby defaulted on its obligations to Plaintiff under the agreements. *See* Christiansen Decl. at ¶ 7. Nevertheless, Plaintiff and Defendant subsequently entered into a Fifth Amendment to Credit Agreement dated February 22, 2024, pursuant to which the Original Credit Agreement was amended and restated in its entirety as the Amended and Restated Credit Agreement dated February 22, 2024 (the "***Amended and Restated Credit Agreement***"). *See* Exh. 2-A at 50. Under the terms of the Amended and Restated Credit Agreement, (a) the Original Loan was collapsed and converted into a single-advance term loan

---

December 20, 2021, a Third Amendment to Credit Agreement dated June 23, 2022, a Fourth Amendment to Credit Agreement dated April 26, 2023, and a Limited Waiver Letter Agreement dated September 28, 2023.

(the "**Term Loan**"), and (b) Plaintiff made available to Defendant a revolving credit facility in the maximum principal amount of $2,000,000.00 (the "**Revolving Credit Loan**," and the advances thereunder are "**Revolving Loans**") to provide Defendant with access to funds to pay down its accounts payable and perform well workovers to restore production. *Id.* at 72. The Term Loan and the Revolving Credit Loans are hereinafter collectively referred to as the "**Loans**."

17. The Term Loan is evidenced by a Term Loan Promissory Note (the "**Term Loan Note**") dated February 22, 2024, executed by Defendant in favor of Plaintiff in the face amount of $7,430,588.09. *Id.* at 128. The Revolving Credit Loan is evidenced by a Revolving Credit Promissory Note dated February 22, 2024, executed by Defendant in favor of Plaintiff in the face amount of $2,000,000 (the "**Revolving Loan Note**," and together with the Term Loan Note, the "**Notes**"). *Id*. at 125.

18. To evidence and secure payment on the Notes, Plaintiff received assignments from TCB for the following mortgages (collectively, the "**Mortgages**"), financing statements, and other documents previously executed, delivered, granted, and/or otherwise authorized to be filed by Defendant to evidence security for Defendant's obligations under the Loan Documents (collectively, the "**Security Instruments**"):

### The Mortgages

a. Amended and Restated Mortgage, Deed of Trust, Security Agreement, Assignment of Production, Fixture Filing and Financing Statement covering Defendant's Texas oil and gas properties, dated January 29, 2021 (the "**A&R TX Mortgage**"), and recorded in the real property records of the following counties in Texas:

| *County, State* | *Recording Information* |
|---|---|
| Andrews County, TX | Filed February 11, 2021<br>Document No. 21-0643 |

| County, State | Recording Information |
|---|---|
| Gaines County, TX | Filed February 3, 2021<br>Document No. 2021-00641 |

See id. at 139.

      b.    Amended and Restated Mortgage, Security Agreement, Assignment of Production, Fixture Filing and Financing Statement covering Defendant's Kansas oil and gas properties, dated January 29, 2021 (the "*A&R KS Mortgage*"), and recorded in the real property records of the following counties in Kansas:

| County, State | Recording Information |
|---|---|
| Barton County, KS | Filed February 8, 2021<br>Book 621; Pg. 4271 |
| Cowley County, KS | Filed February 3, 2021<br>Book 1070; Pgs. 352-390; Mortgage No. 1564 |
| Rawlins County, KS | Filed February 4, 2021<br>Book 108; Pg. 618; Doc No. 56699 |
| Rush County, KS | Filed February 4, 2021<br>Book 94; Pg. 953: Doc No. 75 |
| Sumner County, KS | Filed February 3, 2021<br>Book 1081; Pg. 542 |

See id. at 275. Only the Cowley County, Kansas assets remain encumbered by the A&R KS Mortgage. See Christiansen Decl. at ¶ 10.

      c.    Amended and Restated Mortgage, Security Agreement, Assignment of Production, Fixture Filing and Financing Statement covering Defendant's Oklahoma oil and gas properties, dated January 29, 2021, and recorded in the real property records of Garvin County,

Oklahoma on February 4, 2021; Book 2336; Pg. 712; Doc No. 2021-000732 ("*A&R OK Mortgage*"). *See* Exh. 2-A at 377.[3]

### *The Financing Statements*

d.  UCC-1 As-Extracted Collateral and Fixture Filings filed in the records of the following counties in Kansas:

| *County, State* | *Recording Information* |
|---|---|
| Barton County, KS | Filed February 8, 2021<br>Book UCC Records; Pg. 11143 |
| Cowley County, KS | Filed February 3, 2021<br>Book UCC Records; Pg. 26140 |
| Rawlins County, KS | Filed February 4, 2021<br>Doc No. 2021-07 |
| Rush County, KS | Filed February 4, 2021<br>UCC No. 2021-008 |
| Sumner County, KS | Filed February 3, 2021<br>UCC No. 2021-000013 |

*See id.*

e.  The following UCC-1 Financing Statements, filed in the records of the Delaware Department of State and Texas Secretary of State:

| *Entity Name as Listed on Initial UCC-1 (all now reflect Thresher Energy, Inc. as debtor except where noted)* | *Initial Filing Number(s)* | *Office* |
|---|---|---|
| Thresher Energy, Inc. | 20210834987 | Delaware Department of State |
| Iron Star Energy, LLC | 20152113248, 20204081545 | Delaware Department of State |

---

[3] Along with copies of the A&R TX Mortgage, A&R KS Mortgage, and A&R Oklahoma Mortgage, the Loan Documents also contain the recorded assignment and assumption of these mortgages to Pajaro in 2023. *See* Exh. 2-A at 131–38, 237–274; 323–376.

| Entity Name as Listed on Initial UCC-1 (all now reflect Thresher Energy, Inc. as debtor except where noted) | Initial Filing Number(s) | Office |
|---|---|---|
| Elk Meadows Resources LLC | 20156049232 | Delaware Department of State |
| Elk Meadows Production LLC | 20156049240 | Delaware Department of State |
| Elk Meadows Oil & Gas LLC | 20156049224 | Delaware Department of State |
| Dempsey Creek Water Handling LLC | 20156049257 | Delaware Department of State |
| Taos Resources Holding Company LLC | 20132289446, 20201002049, 20202708867 | Delaware Department of State |
| Taos Resources Operating Company LLC | 07-0026799646, 13-0018995703 | Texas Secretary of State |
| Taos Resources Acquisition LP | 02-0037955425, 04-0082130189, 07-0026799535, 13-0018995561 | Texas Secretary of State |

*See id.*[4]

19. The Credit Agreement, Notes, Security Instruments, Mortgages, and all other documents evidencing the Loans, are hereinafter referred to collectively as the "**Loan Documents**."[5]

**D.     The Indebtedness**

---

[4] The Loan Sale Agreement between TCB and Pajaro contains the above-referenced table and provides the entity names as listed on the initial UCC filing. *See* Exh. 2-A at 29. The UCC Financing Statement Amendments assigning each of these to Pajaro are also included in the Loan Documents. *See id.* at 458–502.

[5] True and correct copies of the Loan Documents are attached hereto as "Exhibit 2-A" to the Christiansen Declaration.

20. In or around November 2023, shortly after Plaintiff assumed the Original Loan, Defendant failed to timely pay its monthly obligations under the Loan Documents, and thereby defaulted on its obligations to Plaintiff under the agreements. *See* Christiansen Decl. at ¶ 8. Despite occasional subsequent payments, and Plaintiff's subsequent extension of the Revolving Credit Loan to allow Defendant to pay down its accounts payable, Defendant remains in default, as described more fully below.

E. **The Loan Defaults**[6]

21. Because of Defendant's ongoing default, certain Events of Default and Defaults (both as defined in the Loan Documents) have occurred and are continuing, including, among others:

    a. Failing to pay principal and interest on the Notes when and as due as required by Section 7.6 of the Amended and Restated Credit Agreement. After Plaintiff acquired the Loan and Loan Documents in September 2023, Defendant briefly made timely payments to Plaintiff on the Term Loan, including two principal payments and four interest payments, totaling just $330,382.74. *See id.* at ¶ 7. Beginning in November 2023, however, Defendant fell behind on its monthly loan payment obligations, making no principal payments and only four interest payments totaling $315,013.34 under the Term Loan, and only five interest payments under the Revolving Credit Loan totaling $120,503.33. *See id*. Defendant owes over $10,829,394.80 to Plaintiff in respect of the Loan and Loan Documents. *See id*. Defendant last made payments under the Term Loan and Revolving Credit Loan in August 2024. *See id*. at ¶ 8. Defendant is currently delinquent on 18 monthly payments. As of February 1, 2026, the unpaid and outstanding

---

[6] All capitalized terms used in this section but not otherwise defined shall have the meanings ascribed to such terms in the Amended and Restated Credit Agreement.

obligations owed to Plaintiff are not less than $7,324,429.01 in outstanding principal balance of the Term Loan, plus $1,316,065.79 in accrued unpaid interest thereon, plus $1,855,000.00 in the aggregate outstanding principal balance of the Revolving Credit Loan, plus $333,900.00 in accrued unpaid interest thereon. *See id*.

   b.  Incurring Debt that is not Permitted Indebtedness, which constitutes a failure to observe or perform its covenant set forth in Section 7.6.2. of the Amended and Restated Credit Agreement, for example, by failing to timely pay proceeds on the production and sale of oil and gas to other interest owners, such as royalty owners under mineral leases. *See id*. at ¶ 9.

   c.  Permitting the Interest Coverage Ratio to be less than 2.50 to 1.00 at the end of Defendant's fiscal quarter ending December 31, 2024, which constitutes a failure to observe or perform Defendant's covenant set forth in Section 7.15.1. of the Amended and Restated Credit Agreement. *See id*.

   d.  Permitting the Current Ratio to be less than 1.00 to 1.00 at the end of the applicable fiscal quarter(s), including, but not limited to, following the Assignment, which constitutes a violation of Section 7.15.2. of the Amended and Restated Credit Agreement. *See id*.

   e.  Permitting the Leverage Ratio to exceed 3.5 to 1.00 at the end of the applicable fiscal quarter(s), including, but not limited to, following the Assignment, which constitutes a violation of Section 7.15.3. of the Amended and Restated Credit Agreement. *See id*.

   f.  Defaulting under Material Agreements beyond any applicable grace period, and failing to comply with Material Agreements where doing so could reasonably be expected to have a Material Adverse Effect, as prohibited by Sections 7.11.2 and 7.14 of the Amended and Restated Credit Agreement, including, without limitation, by failing to comply with mineral leases or other contracts with third parties. *See id*.

    g.  Incurring Material Adverse Effects including (i) material adverse effects on Defendant's business, operations, Properties, results of operations and/or financial condition, (ii) adverse effects upon Defendant's business operations, Properties, results of operations and/or condition (financial or otherwise) which increases the risk that any of Defendant's Debt will not be repaid as and when due, (iii) adverse effects upon the Collateral, and (iv) adverse effects on the priority or enforceability of the Liens securing the Notes (and which, in the case of the circumstances described in clauses (i), (ii) and (iii) above, could reasonably be anticipated to involve damage, loss, Debt or value impairment of $100,000 or more). *See id.*

    h.  Incurring defaults with respect to Defendant's Material Debts which have continued beyond any applicable cure period and have not been waived, including, without limitation, by failing to pay all of its trade and other accounts payable within 90 days after the respective invoice date, which constitute a violation of Section 7.6.3 of the Amended and Restated Credit Agreement. *See id*.

    i.  Failing to timely deliver, among other things, annual, quarterly, and monthly financing statements, and Compliance Certificates, tax returns, production reports, engineering reports, each of which constitute violations of Section 7.2. of the Amended and Restated Credit Agreement. *See id*.

    j.  Failing to provide Plaintiff with a Representative's Certificate within 10 days after any Responsible Representative became aware of the aforementioned Events of Default, which constitute a violation of Section 7.2.3.(i) of the Amended and Restated Credit Agreement. *See id*.

  22.  Plaintiff reserved its rights and remedies with respect to the above defaults and failures, including making efforts to remain in communication with Defendant about its operations

13

and financial struggles (*see id*. at ¶ 13.), but Defendant remained both dilatory in its payments and with respect to its oil and gas obligations—refusing to surrender collateral or materially modify its operations to service its royalty and debt obligations, to preserve its oil and gas interests, and to address potential environmental concerns.

23. Compounding the defaults, in February or March 2025, Defendant sold certain Kansas assets in Barton, Rawlins, Rush, and Sumner Counties for $675,000 in cash, and in connection with the sale, Defendant requested that Plaintiff sign a partial release of the A&R KS Mortgage, thereby releasing all of Plaintiff's interests in the oil and gas leases associated with those Kansas assets. *See id*. at ¶ 10. In exchange, Defendant promised that: "Proceeds of sale will go to paying aging AP and payment to Pajaro." *See id.* It is unknown whether Defendant used the sale proceeds to pay the aging accounts payable in full or in part, but Plaintiff never received any payment. *See id*.

24. For two years, Plaintiff has tried to meaningfully engage with Defendant to discuss Defendant's poor operations and revenue, use and application of resources, and, generally, the factual basis for its payment and covenant defaults. Plaintiff recently entered into an agreement with Defendant to explore the different operational issues affecting Defendant's oil and gas interests (Plaintiff's collateral) for purposes of negotiating a resolution and potentially avoiding the necessity for this action. In connection with that agreement, Defendant conceded to multiple, repeated defaults on its Loan. None of this has been availing, and in the meantime, Plaintiff's collateral has been dissipating or put further at risk. *See id*. at ¶ 11.

25. As a direct and proximate result of Defendant's numerous defaults, Plaintiff has been injured (which injury is continuing). Accordingly, Plaintiff is entitled to pursue all remedies

available to it under the Loan Documents and at law and in equity to protect the value of its collateral, and to collect all amounts due and owing under the terms of the Loan Documents.

F. **Defendant's Consent to Appointment of a Receiver**

26. Pursuant to the express terms of the Mortgages, Plaintiff is entitled to seek the appointment of a receiver upon an Event of Default. *See, e.g.*, Exh. 2-A at 155–57. As further detailed in Plaintiff's concurrently filed motion, an appointment under these terms is necessitated immediately given the continued and growing risk of loss of leases (and thus risk to Plaintiff's collateral) and risk of environmental harm.

27. Specifically, Sections 8.1. (General Remedies) and 8.3 (Judicial Proceedings; Receiver) of each of the Mortgages provide for the appointment of a receiver as a matter of right, without a showing of fraud, insolvency, or mismanagement, and without bond, upon the occurrence of an Event of Default:

> 8.1.2. Appoint as a matter of right, or seek the appointment of, a receiver or receivers to serve without bond for all or any part of the Mortgaged Property, whether such receivership be incident to a proposed sale thereof or otherwise, and the Mortgagor does hereby consent to the appointment of such receiver or receivers to serve without bond and does hereby agree not to oppose any application therefor by the Mortgagee and does hereby agree that there shall be no necessity of showing fraud, insolvency or mismanagement by the Mortgagor for the appointment of a receiver or receivers of the Mortgaged Properties;
>
> . . .
> 8.3 . . . Upon occurrence of an Event of Default which has not been waived by the Mortgagee, the Trustee or the Mortgagee, in lieu of or in addition to exercising the power of sale hereinabove given, may proceed, where permitted by Law, by a suit or suits in equity or at law, whether for a foreclosure hereunder, or for the sale of the Mortgaged Property, or for the specific performance of any covenant or agreement herein contained or in aid of the execution of any power herein granted, or without any showing of fraud, insolvency or mismanagement by the Mortgagor, for the appointment of a receiver or receivers of the Mortgaged Property

>and of the income, rents issues, products, profits and proceeds thereof (any such receiver or receivers to serve without bond) pending any foreclosure hereunder or the sale of the Mortgaged Property, or for the enforcement of any other appropriate legal or equitable remedy. The appointment of a receiver shall in no manner affect the rights of the Mortgagee under Article V hereof.

*See id.*

28. The above provisions in the Mortgages entitle Plaintiff to the immediate appointment of a receiver.

### V. CAUSES OF ACTION – CONDITIONS SATISFIED

29. All conditions precedent to the institution of this action and all claims and causes of action herein have occurred or all conditions precedent have been performed, excused, or waived.

### VI. FIRST CAUSE OF ACTION – IMMEDIATE APPOINTMENT OF A RECEIVER

30. The allegations set forth in paragraphs 1 through 29 above are adopted and incorporated herein by this reference.

31. Plaintiff is informed and believes, and therefore alleges, that Defendant has been and continues to operate some of its oil and gas interests, but has failed and continues to fail to pay royalties required to be paid under the oil and gas leases. On information and belief, Defendant has also failed to maintain royalty reserves for unpaid royalties. The oil and gas leases comprise substantially all of Defendant's assets and constitute Plaintiff's collateral.

32. At the same time, Defendant is not servicing the loan, with the last loan payment made in August 2024.

33. Defendant has acknowledged it has not paid owners with interests in the oil and gas proceeds that it produces and sells; although it has claimed that at least some owners' payments

are appropriately held in suspense, Plaintiff has no way to verify whether Defendant is appropriately suspending these payments.

34. Since Defendant is continuing to operate its wells under the oil and gas leases and collect revenues from the operations, but is failing to maintain its loan and pay royalty obligations current, it is believed that Defendant is either retaining the revenue being generated from oil and gas operations and converting the same for its own use and benefit, or paying insiders and creditors other than Plaintiff and royalty owners at the risk of losing its property and business.

35. Plaintiff has also learned that Defendant has stopped operating some wells. When wells stop operating, the cessation of production often triggers clauses causing mineral leases to expire. Because Defendant leases its mineral interests (and does not own them outright), the expiration of its leases prevents both further oil and gas development and the sale of the undeveloped mineral interests to other parties. Not only that, but Defendant's nonoperating wells have not been properly abandoned and plugged, presenting the ongoing threat of serious environmental harm via the release of toxins and groundwater contamination.

36. Since Defendant has failed to make all of its contractually obligated loan payments to Plaintiff, has failed to pay or otherwise keep current its royalty payment obligations on its oil and gas leases, and has allowed Plaintiff's collateral to be improperly dissipated or otherwise abandoned, Plaintiff is entitled to the appointment of a receiver in order to prevent further or potential expiration of the oil and gas leases, to safeguard income generated by the oil and gas leases, and to protect against the environmental harm caused or likely to be caused by Defendant's abandonment of oil and gas wells.

37. Pursuant to Federal Rule of Civil Procedure 66 and this Court's equitable power, Plaintiff seeks an Order appointing a receiver for the Defendant's property and business in order

to protect the threatened interests in the subject property and operations from imminent harm. Moreover, the Defendant expressly consented to the appointment of a receiver as a matter of right, without a showing of fraud, insolvency or mismanagement, and without bond, upon the occurrence of an Event of Default pursuant to the terms of Sections 8.1. (General Remedies) and 8.3 (Judicial Proceedings; Receiver) of each of the Mortgages. The grounds supporting this appointment are detailed fully in Plaintiff's concurrently filed Motion for the Immediate Appointment of a Receiver.

38. Plaintiff is requesting the court to enter an Order Granting Plaintiff's Motion for Immediate Appointment of Creative Planning Business Alliance ("**CPBA**"), with Alex G. Smith serving as its primary agent, as Receiver of the Defendant's Property and Business. Plaintiff's Order asks this Court to enter a receivership appointment order substantially in the form attached as **Exhibit 2** to the Motion filed concurrently with this Complaint, pursuant to which the Court would (a) take exclusive jurisdiction and possession of Defendant's business, together with all of its right, title, and interest in and to any and all assets, properties, rights, privileges, powers, and interests of every kind and description, whether real, personal, or mixed, whether tangible or intangible, whether now existing or hereafter acquired, and wherever located; and (b) provide the receiver with certain powers and responsibilities specified in such Order.

39. Based on the foregoing allegations, Plaintiff is entitled to the appointment of a receiver to protect its interest in the real property and improvements subject to the Mortgages and the associated operations of Defendant's business.

### VII.    SECOND CAUSE OF ACTION – BREACH OF CONTRACT

40. The allegations set forth in paragraphs 1 through 39 above are adopted and incorporated herein by this reference.

41. Plaintiff and Defendant entered into the Loan Documents, a series of binding agreements whereby Plaintiff would make available certain loans to Defendant and Defendant agreed to timely make all payments due.

42. Plaintiff performed its obligations under the Loan Documents by advancing money to the Defendant, and has otherwise fully performed its obligations under the Loan Documents.

43. Defendant has breached its obligations under the Loan Documents, as described above.

44. As a direct and proximate result of Defendant's breaches, Plaintiff has been injured and incurred damages including, but not limited to (i) $7,324,429.01 in outstanding principal balance of the Term Loan, plus $1,316,065.79 in accrued unpaid interest thereon, and (ii) $1,855,000.00 in the aggregate outstanding principal balance of the Revolving Credit Loan, plus $333,900.00 in accrued unpaid interest thereon. Plaintiff is entitled to recover these fees plus all interest and late fees that will continue to accrue, together with pre-judgment interest and post-judgment interest as allowed by law.

## VIII.   JURY DEMAND

45. Plaintiff demands a trial by jury of all issues so triable.

## IX.   ATTORNEY FEES AND COSTS

46. Plaintiff seeks its reasonable attorney fees and costs of suit pursuant to agreement of the parties, pursuant to Texas Civil Practice and Remedy Code § 38.001 *et seq.* and Fed. R. Civ. P. 54.

## X.   PRAYER

47. WHEREFORE, for the reasons set forth above and on the basis of the evidence contained in the attached Declarations and exhibits in support filed concurrently with this Complaint, Plaintiff moves this Court for entry of an Order:

      a.      That a receiver be appointed immediately, as requested in Plaintiff's concurrently filed Motion for Immediate Appointment of a Receiver and that an order be entered providing for the appointment of Creative Planning Business Alliance, through its primary agent, Alex G. Smith, as receiver for the Defendant's property and business substantially in the form attached as **Exhibit 2** to the Motion for Immediate Appointment of Receiver;

      b.      That Plaintiff be awarded all damages it is entitled to for Defendant's breach of contract;

      c.      Plaintiff be awarded its costs, including reasonable attorney fees pursuant to agreement of the parties, and under Texas Civil Practice and Remedy Code § 38.001 *et seq*. and Fed. R. Civ. P. 54; and

      d.      Such other and further relief as the court deems just and proper.

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Paul Trahan*
Paul Trahan
State Bar: 24003075
Paul.trahan@nortonrosefulbright.com
98 San Jacinto Blvd, Suite 1100
Austin, Texas 78701
Tele: (512) 474-5201
Fax: (512) 536-4598

*Attorney for Plaintiff*